IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JACK LOSEE, | ) | |
| | ) | Civil No. 4:03-cv-40459-RAW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | FINDINGS OF FACT, |
| CHARLES HARPER and MICHAEL | ) | CONCLUSIONS OF LAW |
| GILBERT, | ) | AND ORDER FOR JUDGMENT |
| | ) | |
| Defendants. | ) | |

Plaintiff Jack Losee, an inmate at the Iowa State Penitentiary ("ISP") filed this action under 42 U.S.C. § 1983, claiming defendants violated his rights under the Due Process clause of the Fourteenth Amendment to the U.S. Constitution when they took property from his cell, refused to return it, and required him to dispose of it by sending it to a family member.[1] Jurisdiction is predicated on 28 U.S.C. § 1331. Plaintiff seeks money damages.

The case was referred to the undersigned for decision pursuant to 28 U.S.C. § 636(c). Evidentiary hearing case was held using the Iowa Communications Network (ICN) between the federal courthouse annex in Des Moines, Iowa, and ISP on November 19, 2004. Plaintiff, defense counsel Forrest Guddall and the defendants

---

[1] The Amended Complaint also makes reference to a First Amendment violation and alleges defendants denied Losee an opportunity to appeal the disciplinary decisions by defendant Charles Harper which resulted in the alleged deprivation of his property. The case, however, was tried as a Due Process deprivation of property claim. No evidence was offered to support the contention defendants denied Losee an opportunity to appeal the prison disciplinary rulings involved.

appeared in person at the ISP site; plaintiff's counsel Jeff Lipman was with the Court at the Des Moines site. The record was held open for supplementation. The case is now fully submitted.

## FINDINGS OF FACT

Jack Losee is an inmate at ISP. Since approximately 2001 Losee has been writing poetry and short stories. He submitted several of his works to publishers, and had received favorable responses from at least one. (Exs. 5 and 6). Chaplain Delwin Vande Krol, the religious coordinator at ISP, had also commented favorably on Losee's efforts. Losee provided examples of his work at hearing. (Ex. 7).

ISP places limits on the amount and type of personal property inmates may keep in their cells embodied in a written personal property policy (the "property policy"). (Ex. A)[2]. The property policy defines "allowable personal property" within the various inmate classifications. (Id. at 17-29). Items which are not authorized by the property policy, which exceed policy limits, or

---

[2] At the time of hearing, Exs. A and B were policies with an effective date of 3/25/2004 and 7/29/2004. Upon agreement of the parties at hearing, following the hearing the state substituted copies of the policies in Exs. A and B with copies of the same policies with effective dates of 8/1/2002 and 12/7/2002, respectively. The Court has considered only the substituted exhibits.

Also at the time of hearing Losee reserved objection to defendants' exhibits N-S. The record was left open to supplement any objections within ten days. No objections have been forthcoming, accordingly, exhibits N-S are received and have been considered as part of the record.

which are altered or tampered with are considered contraband. (<u>Id.</u> at 2-3). Property which is legal but unauthorized by the policy or which exceeds limitations must be destroyed, donated to the ISP Chapel or sent out of the institution at the inmate's expense. (<u>Id.</u> at 7-8). The policy defines notice procedures with respect to the disposition of property. (<u>Id.</u>)

From December 2002 to March 2003 defendant Mike Gilbert, a correctional officer at ISP, was assigned to the property department at ISP. His duties in that assignment included conducting cell shakedowns, and storage and disposition of inmate property.

On December 10, 2002 Gilbert conducted an inventory shakedown of Losee's cell. (Ex. C). During the shakedown Gilbert found twenty-eight items, or categories of items, in Losee's personal possessions which he believed were either not authorized, were over property limits, or otherwise appeared to be contraband. (<u>Id.</u>; Ex. D). The items confiscated included an item which was not authorized by Losee's classification status (an audio adapter), some items for which Losee did not have a permit (drawing patterns and templates), canteen food items which Losee had been hoarding, items which were over property limits (extra laundry bag, toenail clippers, fingernail clipper, toothbrushes and toothpaste, 155 envelopes, a bowl), and some altered items (a hotpot, a sweatshirt,

an art book and a "[h]omemade scrap Book)." (Ex. E).[3] The scrapbook contained over 100 poems written by Losee, six short stories and some photographs.

Gilbert testified he thought the scrapbook was contraband because of the way in which it was put together, tied or in some kind of binder. He said he checked with Security Director John Emmett who told him the scrapbook was not authorized. Emmett testified a book tied with string would be considered altered and not authorized.

Gilbert wrote a disciplinary report concerning the contraband (Ex. C) and placed the confiscated items in an evidence box pending hearing on the disciplinary report, together with a copy of an "Evidence/Contraband Chain of Custody Log" which listed the items (Ex. D).

On December 13, 2002 Administrative Law Judge Charles Harper held a hearing on the disciplinary report. He found Losee had violated prison rule 16, unauthorized possession of property, but suspended the sanction based on Losee's prior good conduct. (Ex. E). On a separate, undated "Disposition of Evidence" form he directed that some of the items be returned to the state and that

---

[3] Gilbert placed the code "A" after the art book and the codes "A" and "NA" after the scrapbook in his disciplinary notice concerning the property seized. The Court infers from another exhibit that these codes were intended to designate property as "Altered" and "Not Allowed." See Ex. Q.

others be mailed out of the prison. (Ex. F).[4] The art book and scrapbook were included on the mail-out list with the other items Harper had found Losee was not allowed to have.

Losee testified that at the disciplinary hearing he discussed the various items seized with Harper, Harper told him which items were rule violations and which not, and it was Losee's understanding from Harper's statements that the art book and material in the scrapbook were allowable property that would be returned to him. In his written decision Harper indeed found no violation concerning the art book because "inmates are allowed books." (Ex. E). Unlike the other items discussed in the decision, Harper did not make an express violation finding concerning the scrapbook. Harper has no recollection why he directed the art book and scrapbook be sent from the institution.

Following the disciplinary hearing and Harper's directions for disposition of the property, Losee should have received a "fifteen-day notice" with respect to the art book, scrapbook, and other disallowed property informing him his options were to send the property to a relative or friend, donate it to the

---

[4] The property policy instructs that after property is no longer needed for disciplinary proceedings the administrative law judge is to turn the items over to the personal property department noting the appropriate disposition in conformity with the policy. (Ex. A at 8).

chapel, or have it destroyed. (Ex. A at 7).[5] Though Gilbert is sure he sent such a notice he could not find it in the files and Losee did not receive one. The Court believes Gilbert neglected to send a notice.

On December 13, 2002 Losee sent Harper and his unit manager separate inmate memos or "kites," asking for the return of the property he was allowed to keep, including specifically the art book and scrapbook. (Ex. 8 at 12). Harper responded the same day that "[p]roper procedure [for return of the property] will be follow[ed]." (Id.) The unit manager responded on December 31, 2002 that he had been advised Losee would not be allowed to have the scrapbook back. (Id. at 11). When no property was returned, Losee attempted to file a grievance with respect to the length of time it was taking to obtain return of his allowable property. (Id. at 10). The grievance was apparently denied because the grievance officer felt it dealt with a disciplinary matter, something that is nongrievable. (Id.)

On February 3, 2003 officer Gilbert conducted another inventory shakedown of Losee's cell. (Ex. H). He discovered six items, or categories of items, which he considered to be contraband including two matchbooks taped to the bottom of the lid on Losee's

---

[5] Gilbert testified that if the fifteen-day notice was not responded to, his practice was to extend the period another fifteen days after which, if the inmate still had not said what he wanted done with the property, Gilbert would go to the inmate's cellhouse to get directions from the inmate.

locker box; two books that appeared altered, had not been in Losee's possession in December 2002 and concerning which there was no record of purchase; an outdated medication; and some personal hygiene items and envelopes for which Losee did not have receipts. (Id.) Gilbert wrote another disciplinary report concerning this property (Ex. H) and placed the confiscated items in an evidence box pending hearing on the disciplinary report, together with a copy of an "Evidence/Contraband Chain of Custody Log." (Ex. I).

Harper held a hearing concerning the second report on February 5, 2003 and found Losee had violated the unauthorized possession rule with respect to two altered books and some toothpaste he had obtained from another inmate in violation of prison rules. (Ex. J). On a "Disposition of Evidence" form dated February 11, 2003, Harper directed that the matchbooks be destroyed, that the envelopes and medication be returned to the state and that the remaining items, including the two books, be mailed out at Losee's expense unless Losee could prove ownership of the items. (Ex. K). One of the two books was a Webster's Dictionary.

On February 14 and 18, 2003 Losee sent kites to Deputy Warden Sperfslage, complaining that Gilbert had kept Losee's property taken in December as well as the property taken in February and asking for the return of property Harper had found allowable. Sperfslage referred the property issue to Lieutenant

McKinley. (Ex. 8 at 7). Losee then submitted a grievance seeking return of his property. (Ex. 1). Grievance Officer DeGrange responded that some items would be returned to Losee, but that four books were to be mailed out or destroyed in accordance with Harper's disposition directions. (Id. at 2). By inmate kite Losee asked DeGrange "what 4 books" he was referring to, noting only two had been taken by Gilbert in February. In the same memo Losee again asked for return of the items seized in December (Ex. 8 at 5). DeGrange's reply was nonresponsive.

On March 10, 2003 Losee sent kites to Harper and Captain Peterie complaining again about Gilbert's failure to return his property and asking for assistance. (Ex. 8 at 1-2). The recipients evidently brought Losee's complaints to the attention of Gilbert, who responded by visiting Losee in his cell on March 13, 2003. Gilbert presented Losee with a "Final Notice" concerning the disposition of the property taken in the December and February shakedowns, though it was in fact the first such notice Losee had received. Losee signified what property should be sent out and what destroyed. The art book, scrapbook and dictionary were among the items Losee directed to be sent to his cousin, Heather Mitchell. Losee did not know Mitchell well. The items were mailed to her. She has not responded to subsequent mail from Losee seeking return of the material in the scrapbook, and he fears it has been lost. Under prison policy items ordered sent out are usually not allowed back

in, but no penological reason is suggested why, if removed from the objectionable homemade scrapbook, Losee could not have his personal writings and photos.

On March 14, 2003 Gilbert replied in writing to the kite Losee had sent Harper on March 10, 2003. Gilbert told Losee that the complaints about the property had been resolved as a result of the cellhouse discussion with him on March 13. (Ex. 8 at 1).

### DISCUSSION

The Court will assume a constitutionally cognizable property deprivation occurred when Losee was required to send the scrapbook, art book and dictionary out of ISP.[6] The items were seized as contraband incident to prison disciplinary proceedings. Those proceedings satisfied the minimal prison disciplinary due process requirements laid out in Wolff v. McDonnell, 418 U.S. 539, 563-68 (1974). The Court does not believe that the property interest at stake required greater procedural safeguards in the prison context than the liberty interest which underlay the procedural requirements outlined in Wolff. Id. at 558. Losee received notice of the property alleged to be contraband. (Ex. C, H). He attended a hearing before Administrative Law Judge Harper and presented evidence concerning the property in the form of his

---

[6] The Court's focus from here is on the scrapbook and art book. Harper's disciplinary decision reflects he found the dictionary was contraband because it was altered and the brief record on the subject does not evince a due process violation in connection with that determination.

own statements. He did not ask for witnesses. Harper issued a written decision which, with the exception of the scrapbook, made specific findings as to what property violated prison rules. He gave directions for disposition of the property seized. (Ex. E, F, J, K). Losee thus received pre-deprivation notice and an opportunity to be heard concerning the status of the property seized.[7]

The problem from Losee's standpoint is that the process did not work very well with respect to the contents of the scrapbook and the art book. Losee either misunderstood what Harper told him about the scrapbook and art book at the December 2002 disciplinary hearing, which Harper's written findings of fact in the disciplinary decision did nothing to disabuse him of (and in the case of the art book seemed to confirm), or Harper did orally indicate the items were allowed and would be returned to him, and later either forgot or mistakenly lumped them on the disposition form with the property to be sent out of the prison. In view of Harper's express finding concerning the art book, the latter is the more probable reason for its inclusion on the list of items to be sent out. The Court does not believe Harper intentionally directed

---

[7] Losee also attempted to use post-deprivation procedures available under state law to gain a remedy for the loss of his property. He submitted a claim under the Iowa Tort Claims Act, Iowa Code ch. 669, which was administratively denied. He did not sue, he said, because he could not afford the small claims filing fee. See Iowa Code §§ 669.2(3), .4, .5; Complaint ¶ F(2); 10/22/03 Initial Review Order at 3.

the removal of property he knew or believed Losee was entitled to have. To the contrary, Harper made a mistake or failed to adequately articulate his decision concerning the status of items he in fact had found were contraband under prison rules. In either case, Harper's individual conduct could be characterized as, at worst, negligent.

For his part, Gilbert did as he was directed on the disposition of evidence forms. He failed to give the fifteen-day notices to Losee, but this failure simply delayed the sending of the property from the prison, it had no causal connection to the claimed deprivation itself. Moreover, any failure here was also an instance of negligent conduct.

"Mere negligence is not an actionable deprivation under the Due Process Clause of the Fourteenth Amendment." <u>Williams v. Soligo</u>, 104 F.3d 1060, 1061 (8th Cir. 1997); <u>see</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986); <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984); <u>Russell v. Hennepin County</u>, ___ F.3d ___, ___, 2005 WL 2036267, *7 (8th Cir. Aug. 25, 2005)(citing <u>Wilson v. Lawrence County</u>, 260 F.3d 946, 955 (8th Cir. 2001)). If it were otherwise due process claims would become little more than a species of tort law, a result which "would trivialize the centuries-old principle of due process of law" by taking it far from its purpose of protecting individuals from arbitrary governmental action. <u>Daniels</u>, 474 U.S. at 332. Indeed generally, "negligence . . . does not give

rise to a claim under § 1983." <u>Young v. City of Little Rock</u>, 249 F.3d 730, 734 (8th Cir. 2001); <u>see</u> <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986)("[W]here the government official is merely negligent in causing injury, no procedure for compensation is constitutionally required.") The arguably negligent conduct of Harper and Gilbert in connection with the disposition of the property seized as contraband in the shakedowns of Losee's cell does not provide a basis for finding individual liability for the due process violation alleged.[8]

## CONCLUSIONS OF LAW

Plaintiff has failed to prove defendants Harper and Gilbert are liable in damages under 42 U.S.C. § 1983 for a violation of plaintiff's procedural due process rights under the Due Process Clause of the Fourteenth Amendment in connection with the deprivation of the property in question. Accordingly, defendants are entitled to a judgment of dismissal.

---

[8] Defendants pleaded the defense of qualified immunity from suit, but did not seek pre-trial disposition on this ground. The case having been tried and a determination made that no actionable constitutional violation occurred, it is not necessary to separately discuss the qualified immunity defense.

## ORDER FOR JUDGMENT

The Clerk shall enter judgment dismissing the Complaint.

IT IS SO ORDERED.

Dated this 30th day of August, 2005.


_____
ROSS A. WALTERS
CHIEF UNITED STATES MAGISTRATE JUDGE